**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DIANE BIFFAR, individually and on behalf of all others similarly-situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | No. 3:16-cv-873 ) ) **JURY TRIAL DEMANDED** |
| PINNACLE FOODS GROUP LLC, | ) ) |
| Defendant. | ) |

**CLASS ACTION COMPLAINT**

Plaintiff, Diane Biffar, individually and on behalf of all others similarly-situated, alleges the following facts and claims upon personal knowledge, investigation of counsel, and information and belief.

**CASE SUMMARY**

1. This case arises out of Defendant Pinnacle Foods Group LLC's ("Defendant") deceptive, unfair, and false practices regarding its Duncan Hines Simple Mornings Blueberry Streusel Premium Muffin Mix (the "Product").

2. On the label of the Product, Defendant prominently represents that the Product contains "Nothing Artificial."

3. The Product, however, contains synthetic, artificial, and/or genetically modified ingredients, including but not limited to Monocalcium Phosphate, Xanthan Gum, Soy Lecithin, and Corn Starch (the "Artificial Ingredients").

4. Monocalcium Phosphate is a synthetic chemical compound that is commercially manufactured and chemically synthesized by mixing phosphoric acid with a calcium-containing medium. The mixture is then dried and granulated and used as a synthetic leavening agent.

1

5.      Xanthan Gum is a synthetic thickener that is commercially manufactured by the likes of Cargill by fermenting bacteria with a carbohydrate (often GMO corn syrup), which is then sterilized and dried with isopropyl alcohol or ethanol before being pressed and ground for distribution.

6.      Federal regulations identify both Monocalcium Phosphate and Xanthan Gum as synthetic at 7 C.F.R. 205.605(b).

7.      The words "synthetic" and "artificial" are synonyms.  *See http://www.merriam-webster.com/thesaurus/synthetic.*

8.      Soy Lechitin is a synthetic emulsifier and stabilizer.  Soy Lechitin is a waste product from the manufacturing process to create soy oil.  It is manufactured with the use of harsh chemical solvents, usually hexane and bleach.  93% of soy is genetically modified.

9.      Corn Starch is a highly processed, synthetic corn product is used as an anti-caking and thickening agent.  It is manufactured using acid and sulfur dioxide, as well as centrifuges and hydrocyclones.  88% of corn used to make corn starch is genetically modified.

10.     Based on information and belief, the Soy Lecithin and Corn Starch in the Product are derived from genetically modified organisms ("GMOs").

11.     A product that contains GMOs by definition contains synthetic, artificial ingredients.

12.     Monsanto defines GMOs as "Plants or animals that have had their genetic makeup altered to exhibit traits that are not naturally theirs. In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism."[1]

---

[1] *See* Monsanto, *Glossary*, available at *http://www.monsanto.com/newsviews/Pages/glossary.aspx#g* (last visited August 2, 2016).

13. According to the World Health Organization, of which the United States is Member State, "GMOs can be defined as organisms in which the genetic material (DNA) has been *altered in a way that does not occur naturally*. The technology is often called 'modern biotechnology' or 'gene technology,' sometimes also 'recombinant DNA technology' or 'genetic engineering.' It allows selected individual genes to be transferred from one organism into another, also between non-related species."[2]

14. In addition, the Supreme Court has held a naturally occurring DNA segment is a product of nature and not patent eligible, but that synthetically created DNA was not naturally occurring and, therefore, is not precluded from patent eligibility. *See Ass'n. for Molecular Pathology v. Myriad Genetics, Inc.,* No. 12-398, 2013 WL 2631062*, --- S. Ct. ---* (June 13, 2013). Because naturally occurring genes cannot be patented, it follows that genes that can be patented are artificial.

15. Plaintiff and reasonable consumers reasonably believe and assume that products labeled as containing "Nothing Artificial" do not contain any synthetic, artificial, and/or GMO ingredients.

16. Because the Product contains the Artificial Ingredients, the representation that the Product contains "Nothing Artificial" is unfair, false, deceptive, and misleading, and is likely to deceive reasonable consumers.

17. Plaintiff brings this case to recover damages for Defendant's false, deceptive, unfair, and misleading marketing and advertising in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and common law.

---

[2]. WORLD HEALTH ORGANIZATION, 20 Questions on Genetically Modified (GM) Foods, http://www.who.int/foodsafety/publications/biotech/20questions/en/index.html (last visited August 2, 2016).

**PARTIES**

18. Plaintiff, Diane Biffar is a resident of Monroe County, Illinois. On regular occasions during the Class Period (as defined below), including in May 2016, Plaintiff purchased the Product at Shop 'n Save in St. Clair County, IL for personal, family, or household purposes after reviewing the "Nothing Artificial" label, which deceived her. If Plaintiff had known the Product in fact contained artificial, synthetic, and/or GMO ingredients, she would not have purchased it or would have paid less for it. The purchase price of the Product was $3.49.

19. Defendant Pinnacle Foods Group LLC is a Delaware LLC with its principal place of business at 399 Jefferson Rd, Parsippany, NJ 07054.

**JURISDICTION AND VENUE**

20. This Court has jurisdiction over the subject matter presented by this Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the Putative Class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff is a citizen of the State of Illinois, Monroe County, and Defendant can be considered a citizen of New Jersey or Delaware for diversity purposes.

21  Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that damages resulting from the claims in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs.

22  This Court has personal jurisdiction over Defendant because Defendant has had more than minimum contacts with the State of Illinois and has purposefully availed itself of the

privilege of conducting business in this state. In addition, as explained below, Defendant has committed affirmative tortious acts within the State of Illinois that gives rise to civil liability, including distributing the misleading Product for sale throughout the State of Illinois.

23     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the Product in this judicial District.

## ALLEGATIONS OF FACT

24.     Defendant manufactures, sells, and distributes baking products, including the Product.

25.     Knowing that consumers like Plaintiff are increasingly interested in purchasing healthy food products that do not contain potentially harmful artificial, synthetic, and/or GMO ingredients, Defendant has sought to take advantage of this growing market by labeling certain products as containing "Nothing Artificial." By affixing such a label to the packaging of the Product, Defendant is able to entice consumers like Plaintiff to pay a premium for the Product.

26.     The label of the Product is deceptive, unfair, false, and misleading in that Defendant prominently represents that the Product contains "Nothing Artificial":



27.     The Product, however, in fact contains synthetic, artificial, and/or GMO ingredients, including the Artificial Ingredients.

28.     Xanthan Gum is a synthetic thickener that is commercially manufactured by the likes of Cargill by fermenting bacteria with a carbohydrate (often GMO corn syrup), which is then sterilized and dried with isopropyl alcohol or ethanol before being pressed and ground for distribution.  7 C.F.R. 205.605(b) identifies Xanthan Gum as a synthetic substance.

29.     Monocalcium Phosphate is a synthetic chemical compound that is commercially manufactured and chemically synthesized by mixing phosphoric acid with a calcium-containing medium.  The mixture is then dried and granulated and used as a synthetic leavening agent.  7 C.F.R. 205.605(b) identifies Monocalcium Phosphate as a synthetic substance.

30.     Soy Lechitin is a synthetic emulsifier and stabilizer.  Soy Lechitin is a waste product from the manufacturing process to create soy oil.  It is manufactured with the use of harsh chemical solvents, usually hexane and bleach.  93% of soy is genetically modified.

31.     Corn Starch is a highly processed, synthetic corn product is used as an anti-caking and thickening agent.  It is manufactured using acid and sulfur dioxide, as well as centrifuges and hydrocyclones.  88% of corn used to make corn starch is genetically modified.

32.     A product that contains GMOs by definition contains synthetic, artificial ingredients.

33.     Neither Plaintiff nor any reasonable consumer would expect to find artificial, synthetic, and/or GMO ingredients in a product labeled as containing "Nothing Artificial."

34.     Neither Plaintiff nor any reasonable consumer when reviewing the label of the Product would know nor should know that Xanthan Gum, Monocalcium Phosphate, Soy Lechitin, and Corn Starch are artificial, synthetic, and/or GMO ingredients.

35. As a result of Defendant's deceitful labels, Defendant was able to charge and Plaintiff and class members paid a premium for the Product. Because the Product in fact contains artificial, synthetic, and GMO ingredients, the Product was worth less than it was represented to be, and Plaintiff and class members paid extra for it.

36. Defendant's misrepresentation constitutes unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation within the meaning of the ICFA.

## CLASS ALLEGATIONS

37. Pursuant to Fed. R. Civ. Pro. 23(a), (b)(2) and (b)(3), Plaintiff brings this action on her own behalf and on behalf of the following proposed classes of all other similarly situated persons ("Class Members" of the "Classes") consisting of:

- The Nationwide Class:     All citizens of all states other than Missouri who purchased Duncan Hines Simple Mornings Blueberry Streusel Premium Muffin Mix for personal, household, or family purposes and not for resale in the five years preceding the filing of this Petition (the "Class Period"); and

- The Illinois Class:   All citizens of Illinois who purchased Duncan Hines Simple Mornings Blueberry Streusel Premium Muffin Mix for personal, household, or family purposes and not for resale during the Class Period.

38. Excluded from the Classes are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendant has a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in

the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

39.     Upon information and belief, the Classes consist of thousands of purchasers. Accordingly, it would be impracticable to join all Class Members before the Court.

40.     There are numerous and substantial questions of law or fact common to all of the members of the Classes and which predominate over any individual issues.  Included within the common question of law or fact are:

> a.  Whether the "Nothing Artificial" claim on the Product's label is unfair, false, misleading, and deceptive;
>
> b.  Whether Defendant violated the ICFA by selling the Product with false, misleading, and deceptive representations;
>
> c.  Whether Defendant intended that Plaintiff and the Class Members would rely on its "Nothing Artificial" representation;
>
> d.  Whether Defendant's acts constitute unfair, deceptive and fraudulent business acts and practices or deceptive, untrue, and misleading merchandising practices;
>
> e.  Whether Defendant created and breached the express warranty that the Product contains "Nothing Artificial;"
>
> f.  Whether Defendant was unjustly enriched; and
>
> g.  The proper measure of damages sustained by Plaintiff and Class Members.

41.     The claims of the Plaintiff are typical of the claims of Class Members, in that they share the above-referenced facts and legal claims or questions with Class Members, there is a

sufficient relationship between the damage to Plaintiff and Defendant's conduct affecting Class Members, and Plaintiff has no interests adverse to the interests other Class Members.

42. Plaintiff will fairly and adequately protect the interests of Class Members and have retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

43. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a. The claim presented in this case predominates over any questions of law or fact, if any exists at all, affecting any individual member of the Classes;

    b. Absent a Class, the Class Members will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

    c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    d. When the liability of Defendant has been adjudicated, claims of all Class Members can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the court as a class action, which is the best available means by which Plaintiff and members of the Classes can seek redress for the harm caused to them by Defendant.

44. Because Plaintiff seeks relief for the entire Classes, the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual member of the Classes, which would establish incompatible standards of conduct for Defendant.

45. Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute, which is the center of this litigation. Adjudications with respect to individual members of the Classes would, as a practical matter, be dispositive of the interest of other members of the Classes who are not parties to the adjudication and may impair or impede their ability to protect their interests. As a consequence, class treatment is a superior method for adjudication of the issues in this case.

46. Defendant has acted on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLAIMS FOR RELIEF

### Count One – Violation of the ICFA

**(On Behalf of the Illinois Class)**

47. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

48. The ICFA declares the following to be unlawful: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment,

suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of any trade or commerce[.]" 815 Ill. Comp. Stat. Ann. 505/2.

49. Defendant's conduct in advertising and selling the Product as containing "Nothing Artificial" when it in fact contains the Artificial Ingredients constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

50. Defendant intended that Plaintiff and the Class Members would rely on its "Nothing Artificial" representation. Defendant is aware that consumers like Plaintiff and Class Members are becoming increasingly interested in purchasing healthy products that do not contain artificial, synthetic, and GMO ingredients. Defendant intended to prey on this interest.

51. The "Nothing Artificial" misrepresentation is material because it concerns the type of information upon which a reasonable consumer would be expected to rely in making a decision whether to purchase.

52. Because Defendant is in the business of selling food products, Defendant committed the unfair and deceptive acts in the conduct of its trade and commerce.

53. Defendant's practice of advertising and selling the Product as containing "Nothing Artificial" when it in fact contains the Artificial Ingredients is also unfair. The practice offends public policy and is immoral, unethical, and unscrupulous because Illinois consumers are increasingly interested in purchasing and using healthy, truly natural products without synthetic substances. Selling the Product as contacting "Nothing Artificial" when it actually contains the Artificial Ingredients offends the public's expectation to be told the truth about the products they are buying.

54. Defendant's conduct causes substantial injury to consumers. Not only are consumers being misled into purchasing a Product that is not what it is represented to be, but exposing consumers to unwanted and potentially harmful synthetic ingredients is substantially injurious.

55. Neither Plaintiff nor any reasonable consumer would expect to find artificial, synthetic, and/or GMO ingredients in a Product labeled as containing "Nothing Artificial."

56. Neither Plaintiff nor any reasonable consumer when reviewing the Product's label would know nor should know that the Artificial Ingredients are synthetic, artificial, and/or GMO substances.

57. Because the Product in fact contains the Artificial Ingredients, the Product as sold was worth less than the Product as represented, and Plaintiff and Class Members paid a premium for it. Had the truth be known, Plaintiff and Class Members would not have purchased the Product or would have paid less for it.

58. Plaintiff and Class Members were deceived by the "Nothing Artificial" label on the Product and suffered economic damages as a proximate result of Defendant's unlawful conduct as alleged herein, including the difference between the actual value of the Product and the value of the Product if it had been as represented.

59. Plaintiff also seeks to enjoin Defendant's ongoing deceptive practices relating to its claims on the Products' labels and advertising.

**Count Two – Unjust Enrichment**

**(On Behalf of the Nationwide Class)**

60. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

61. By purchasing the Product, Plaintiff and the class members conferred a benefit on Defendant in the form of the purchase price of the fraudulent Product.

62. Defendant appreciated the benefit because, were consumers not to purchase the Product, Defendant would have no sales and make no money.

63. Defendant's acceptance and retention of the benefit is inequitable and unjust and violates the fundamental principles of justice, equity, and good conscience because the benefit was obtained by Defendant's fraudulent and misleading representations about the Products.

64. Equity cannot in good conscience permit Defendant to be economically enriched for such actions at Plaintiff and Class Members' expense and in violation of Illinois law, and therefore restitution and/or disgorgement of such economic enrichment is required.

## Count Three - Breach of Express Warranty

### (On Behalf of the Nationwide Class)

65. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

66. Defendant made the affirmation of fact and the promise to Plaintiff and the class members that the Product contains "Nothing Artificial," guaranteeing to Plaintiff and the class members that the Product was in conformance with the representation.

67. These affirmations of fact and promises became part of the basis of the bargain in which Plaintiff and class members purchased Defendant's Product, and Plaintiff and class members relied on the affirmations when making their purchasing decisions.

68. Defendant breached its express warranty that the Product contained "Nothing Artificial" by providing Plaintiff and class members with a Product that contains artificial, synthetic, and/or GMO ingredients.

69. As a result of Defendant's breach of warranty, Plaintiff and the class members have been deprived of the benefit of their bargain in that they bought a Product that was not what it was represented to be, and they have spent money on a Product that had less value than was reflected in the premium purchase price they paid for the Product.

70. Because Defendant made the affirmation of fact and promise directly on its own labels and packaging, privity is not required to bring this claim.

71. Because Defendant has actual knowledge that its Product contains artificial ingredients and because others have already alerted Defendant to the issues with its Product, pre-suit notice of this claim is not required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated persons, prays the Court:

    a. Grant certification of this case as a class action;

    b. For an award of declaratory and equitable relief declaring Defendant's conduct to be in violation of ICFA and enjoining Defendant from continuing to engage in deceptive, unfair, and false marketing of the Product;

    c. Appoint Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

    d. Award compensatory damages to Plaintiff and the proposed Class, or, alternatively, require Defendant to disgorge or pay restitution of its ill-gotten gains;

    e. Award pre- and post-judgment interest;

    f. Award reasonable and necessary attorneys' fees and costs; and

    g. For all such other and further relief as may be just and proper.

Dated August 2, 2016	Diane Biffar, Individually, and on Behalf of a Class of Similarly Situated Individuals, Plaintiff

By:	/s/ Matthew H. Armstrong
Matthew H. Armstrong (ARDC 6226591)
ARMSTRONG LAW FIRM LLC
8816 Manchester Rd., No. 109
St. Louis MO 63144
Tel: 314-258-0212
Email: matt@mattarmstronglaw.com

Stuart L. Cochran
Texas State Bar No. 24027936
LAW OFFICES OF STUART L. COCHRAN, PLLC
12720 Hillcrest Rd., Ste. 1045
Dallas, TX 75230
(214) 300-1765
scochran@scochranlaw.com

Attorneys for Plaintiff and the Putative Class